15 MAG       2466      DOC # 1

Approved: _____
DINA MCLEOD / JAMES MCDONALD
Assistant United States Attorneys

Before:  THE HONORABLE RONALD L. ELLIS
         United States Magistrate Judge
         Southern District of New York

ORIGINAL

U.S. DISTRICT COURT
FILED
JUL 1 5 2015
S. D. OF N.Y.

- - - - - - - - - - - - - - - - - x
                                  :    SEALED COMPLAINT
UNITED STATES OF AMERICA          :
                                  :    Violations of 18 U.S.C.
         - v. -                   :    §§ 922(g)(1), 924(c), and
                                  :    2; 21 U.S.C. §§ 812,
LEWIS CLARKE,                     :    841(a)(1) and 841(b)(1)(C).
                                  :    COUNTY OF OFFENSE:
              Defendant.          :    BRONX
                                  :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

         CANDICE HENRY, being duly sworn, deposes and says that she is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and charges as follows:

## COUNT ONE
(Felon in Possession of a Firearm)

         1.    On or about July 15, 2015, in the Southern District of New York and elsewhere, LEWIS CLARKE, the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess, in and affecting commerce, a firearm, to wit, a Charter Arms, Model Undercover .38 Special revolver, which previously had been shipped and transported in interstate and foreign commerce.

         (Title 18, United States Code, Section 922(g)(1).)

## COUNT TWO
(Narcotics Possession with Intent to Distribute)

         2.    On or about July 15, 2015, in the Southern District of New York and elsewhere, LEWIS CLARKE, the defendant, intentionally and knowingly distributed and possessed with the intent to distribute a controlled substance, and aided and

abetted the same, in violation of Title 21, United States Code, Section 841(a)(1).

3.    The controlled substance involved in the offense was a quantity of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code,
Sections 812, 841(a)(1) and 841(b)(1)(C);
and Title 18, United States Code, Section 2.)

## COUNT THREE
(Firearm Possession in Connection with a Narcotics Offense)

4.    On or about July 15, 2015, in the Southern District of New York and elsewhere, LEWIS CLARKE, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the narcotics offense charged in Count Two of this Complaint, knowingly did use and carry a firearm, and in furtherance of such narcotics offense, knowingly did possess a firearm.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5.    I am a Special Agent with the ATF assigned to the Joint Firearms Task Force, and I have been personally involved in the investigation of this matter.  This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses and others, as well as my examination of reports, records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6.    Based on my conversations with two NYPD officers ("Officer-1" and "Officer-2," respectively; the "Two Officers," collectively) who have participated in this investigation, I have learned, among other things, the following:

2

a.    On or about July 14, 2015, at approximately 11:55 p.m., the Two Officers, who were in plainclothes, exited the 40th precinct stationhouse in the Bronx.  A witness ("W-1") waved the Two Officers down and told the Two Officers that W-1 had seen someone shooting a gun into the air in the vicinity of 143rd Street and Willis Avenue.

b.    The Two Officers proceeded to the vicinity of 143rd Street and Willis Avenue, where the Officers observed a large group of people in the courtyard ("Mott Haven Courtyard") of the New York City Housing Authority's ("NYCHA") Mott Haven Houses ("Mott Haven Houses").

c.    The Two Officers stood close to the crowd of people in the Mott Haven Courtyard.  The Two Officers heard people in the crowd angrily discussing an ongoing dispute between members of a violent gang based in the Mott Haven Houses and members of a violent gang based in NYCHA's Patterson Houses in the Bronx ("Patterson Houses").

d.    The Two Officers then called in three other NYPD officers ("Officer-3," "Officer-4," and "Officer-5," respectively) and advised Officers-3, 4, and 5 to proceed to the Patterson Houses to investigate.

7.    Based on my conversations with Officer-3, Officer-4, and Officer-5,  who have participated in this investigation, I have learned, among other things, the following:

a.    Officers-3, 4, and 5, who were in plainclothes, drove to the Patterson Houses and Officer-3 and Officer-4 exited the police vehicle.  Officer-3 and Officer-4 walked to a courtyard in the Patterson Houses ("Patterson Courtyard") in the vicinity of 140th Street and Third Avenue.

b.    Officer-3 and Officer-4 observed a group of people in the Patterson Courtyard.  When the group of people saw Officer-3 and Officer-4, the group of people dispersed toward Third Avenue.  Officer-3 and Officer-4 looked around the Patterson Courtyard and observed a black bag (the "Bag") on top of a garbage can (the "Garbage Can").  Officer-3 picked up the Bag and opened it.  Inside the Bag was a purse (the "Purse").  Officer-3 opened the Purse and discovered a .38 caliber handgun ("Firearm-1").

      c.    Officer-3 left Firearm-1 in the Purse, placed the Purse back in the Bag, and placed the Bag back on top of the Garbage Can.

      d.    Officer-3 then proceeded to the rooftop of a nearby building to conduct surveillance on the Patterson Courtyard.

      e.    Officer-4 proceeded to a different building nearby where Officer-4 had an unobstructed view of the Patterson Courtyard.

      f.    Officer-5 remained in the police vehicle.

      g.    From the rooftop, Officer-3 relayed his observations via radio to Officers-4 and 5.  Officer-3 saw a man in a black and dark gray shirt, later identified as LEWIS CLARKE, the defendant, looking around the Patterson Courtyard. Officer-3 observed CLARKE leave the Patterson Courtyard and return to the Patterson Courtyard a short while later.  CLARKE then sat on a bench in the Patterson Courtyard and continued to look around.  CLARKE walked over to the Garbage Can and looked at it, then walked back to the bench.  Other people began entering the Patterson Courtyard.

      h.    Officer-3 and Officer-4 then observed CLARKE walk to the Garbage Can, grab the Bag, and walk out of the Patterson Courtyard.

      i.    Officer-4 followed CLARKE.  Other people in the Patterson Courtyard signaled to CLARKE that he was being followed, at which point CLARKE began to run.

      j.    Officer-4 pursued CLARKE on foot and radioed for assistance.

      k.    CLARKE ran into a building in the vicinity of 370 Morris Avenue (the "Building").  Officer-4 pursued CLARKE into the Building and caught up with CLARKE on the second floor.

      l.    CLARKE knocked on a door to an apartment on the second floor (the "Apartment").  As Officer-3 attempted to restrain CLARKE, someone inside the Apartment opened the door and both CLARKE and Officer-3 fell into the Apartment.

      m.    Officers-1, 2, 3, 4, and 5 were now all on the second floor of the Building.  Some of the officers held back the occupants of the Apartment and the other officers

restrained CLARKE. One of the officers retrieved the Bag. One of the officers looked into the Bag and observed that Firearm-1 was still in the Purse inside the Bag. On or about July 15, 2015, at approximately 1:05 a.m., CLARKE was handcuffed.

n.   The Officers then transported CLARKE to the 40th Precinct stationhouse.

o.   At the 40th Precinct stationhouse, Officers-3, 4, and 5 took CLARKE into a room to search him.  One of the officers asked CLARKE whether he had anything else on him. CLARKE responded affirmatively, and pulled from his shorts approximately 14 small plastic bags, each containing a white rocky substance.  Based on his training and experience, Officer-3 believed that the small plastic bags contained crack cocaine packaged for sale.

p.   After CLARKE was searched, CLARKE spontaneously stated, in substance and in part, "Thanks for not shooting me."  Officer-3 responded, in substance and in part, "We're just trying to do our jobs."  CLARKE then responded, in substance and in part, "I understand that.  I respect that. It's my gun.  I have to take that."

8.   Based on my review of photographs taken of Firearm-1, I know that Firearm-1 is a Charter Arms, Model Undercover .38 Special revolver.

9.   Based on my communications with a Joint Firearms Task Force officer who communicated with a Special Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives who is familiar with the manufacturing of firearms, I know that Firearm-1 was not manufactured in New York state.

10.   I have reviewed criminal history records pertaining to LEWIS CLARKE, the defendant, which show that on or about July 1, 2013, in the U.S. District Court for the Southern District of New York, CLARKE was convicted of Conspiracy to Distribute and Possess with Intent to Distribute Crack, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C).

WHEREFORE, the deponent respectfully requests that LEWIS CLARKE, the defendant, be imprisoned or bailed, as the case may be.

CANDICE HENRY
Special Agent
Bureau of Alcohol, Tobacco and Firearms and Explosives

Sworn to before me this
15th day of July, 2015

THE HONORABLE RONALD L. ELLIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK